IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MACAULAY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 1:25-cv-934 (LMB/LRV) |
| HOWARD LUTNIK, in his official capacity as ) | |
| United States Secretary of Commerce, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Pro se plaintiff Macaulay Williams ("Williams" or "plaintiff")—a former Patent Examiner in the U.S. Patent and Trademark Office ("USPTO" or "the agency") who was removed from his position due to excessive absences—has filed a six-count Complaint against the United States Secretary of Commerce ("defendant")[1] seeking compensatory damages and attorney's fees for wrongful termination. Before the Court are defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Judgment on the Pleadings, and for Summary Judgment ("defendant's Motion") and plaintiff's Motion for Summary Judgment ("plaintiff's Motion"). The motions have been fully briefed, and the Court has determined that oral argument will not aid the decisional process. For the reasons discussed below, defendant's Motion will be granted, and plaintiff's Motion will be denied.

I. BACKGROUND

A. Factual Background

Unless otherwise indicated, the following facts are uncontested. Williams began working

---

[1] Williams filed his Complaint against former U.S. Secretary of Commerce Gina Raimondo in her official capacity, who has since been replaced by Howard Lutnick. See Fed. R. Civ. P. 25(d).

as a Patent Examiner on June 30, 2014. [Dkt. No. 34-2] at 2. Seven months after starting his employment, he began experiencing medical issues for which the USPTO began to grant Williams's requests for leave. On February 9, 2015, Williams requested leave from February 10, 2015 to February 20, 2015 pursuant to the Family and Medical Leave Act ("FMLA"), which the agency granted, [Dkt. No. 34-24] at 2; and on April 10, 2015, Williams submitted FMLA documentation that he would be unable to work from April 13, 2015 through July 6, 2015 due to a medical condition. [Dkt. No. 34-1] at 3. Accordingly, the agency granted Williams 480 hours of FMLA leave. Id.

On July 7, 2015, at the end of his FMLA leave, Williams failed to return to work. Supervisory Patent Examiner Pierre Vital issued Williams a letter informing him that he had exhausted his FMLA leave and directing Williams to return to work by July 10, 2015. Id.; [Dkt. No. 34-5]. On July 12, 2015, Williams requested—and the agency granted him—leave without pay ("LWOP") status from July 7, 2015 through July 13, 2015. See [Dkt. No. 34-6]. On July 30, 2015, Williams filed an Office of Worker's Compensation Program ("OWCP") claim "for injuries [he] allegedly suffered on July 13, 2015." [Dkt. No. 34-3]. As a result, Williams was "placed in a provisional OWCP continuation of pay status between July 14, 2015 through August 27, 2015."[2] Id. Williams extended his leave from August 28, 2015 through September 4, 2015 by using 48 hours of FMLA leave. [Dkt. No. 34-1] at 3. On September 10, 2015, he submitted a medical note from his physician stating that he was receiving medical treatment and would need a leave of absence from September 15, 2015 until December 15, 2015. [Dkt. No. 34-7]. The agency granted Williams LWOP for that time period, allowing it to start retroactively from

---

[2] The Department of Labor denied Williams's OWCP claim on September 17, 2015 due to insufficient evidence. [Dkt. No. 34-1] at 3.

2

Monday, September 7, 2015. [Dkt. No. 34-1] at 4.

On December 15, 2015, the day Williams was scheduled to return to work, he requested an additional leave of absence from December 15, 2015 to March 15, 2016. [Dkt. No. 34-8]. Although the agency granted LWOP for that time period, on February 10, 2016, the agency mailed Williams a letter stating that his absences had continued beyond a reasonable time and advising him that the agency would initiate adverse action if he did not return to work. [Dkt. No. 34-9]. Williams denies having received that letter. [Dkt. No. 1] at ¶ 68; [Dkt. No. 40] at 10–11. On March 11, 2015, Williams requested additional leave from March 15, 2016 to June 15, 2016 due to a "work injury." [Dkt. No. 34-10]. The USPTO granted that LWOP request. [Dkt. No. 34-1] at 4. Williams then requested an extension of LWOP to September 15, 2016, which the agency granted. Id.

Williams returned to work on September 6, 2016 on a part-time schedule using LWOP to reach his 80-hour pay period requirement. Id. at 5. On November 4, 2016, Williams requested a 12-week medical leave for a "traumatic and psychological work injury," stating that he would return to work on January 24, 2017. Id. The agency granted that LWOP request. Williams sought an extension of that leave with a return date of April 17, 2017, which the agency granted, [Dkt. No. 34-14]; however, on March 1, 2017, the Director of the USPTO's Technology Center issued Williams a Notice of Proposed Removal, stating that since July 7, 2015, Williams had been "absent from the workplace for an excessive period of time," [Dkt. No. 34-1] at 2. The Notice of Proposed Removal calculated that Williams had been "absent from the office for 2,741.25 hours, including 2,477.25 hours of [LWOP] and 264 hours of OWCP injury leave, between July 14, 2015 and February 3, 2017." Id. at 3. Williams responded to the Notice of Proposed Removal orally on May 9, 2017. [Dkt. No. 34-15]. After considering all of the evidence presented, Assistant Deputy Commissioner for Patent Operations Jack Harvey

3

concluded that removal was necessary because of Williams's excessive absences. [Dkt. No. 34-16]. Accordingly, Williams's employment with the USPTO was terminated on June 7, 2017.

B. <u>Administrative Proceedings</u>

Over the course of his employment with the USPTO, Williams filed numerous Equal Employment Opportunity ("EEO") complaints, specifically in July 2015, September 2015, December 2016, and October 2017, alleging various violations of his rights. [Dkt. Nos. 34-17, 34-18, 34-19, 34-20]. Additionally, after Williams's employment was terminated, he filed an appeal with the Merit Systems Protection Board ("MSPB" or "Board") challenging his removal and alleging affirmative defenses of whistleblower reprisal, retaliation for EEO activity, failure to accommodate, and discrimination based on age, race, and national origin. [Dkt. No. 34-23]. An administrative judge ("AJ") issued a 38-page decision sustaining the agency's decision to terminate Williams's employment. [Dkt. No. 34-24]. Upon examining each time period in which Williams was absent from work, the AJ first found that Williams was absent from work for over 2,300 hours "while on leave for compensable injury or on LWOP," which the AJ concluded was "clearly sufficient to sustain a charge of excessive absence." [Dkt. No. 34-23] at 19. The AJ also found that Williams received adequate notice of potential discipline through the February 10, 2016 letter and that the USPTO needed to fill Williams's position with an available employee. <u>Id.</u> at 22–24. Because of the adverse impact of Williams's absence on the agency and the agency's lack of confidence that Williams could return to work on a regular basis, the AJ concluded that "the agency's penalty of removal will not be disturbed." <u>Id.</u> at 38.

On April 11, 2018, Williams filed a Petition for Review with the MSPB, which the USPTO opposed. [Dkt. Nos. 34-24 & 34-25]. On April 23, 2024, the MSPB issued an Opinion and Order affirming the AJ's decision, sustaining the USPTO's terminating Williams's employment but correcting some of the AJ's factual findings. [Dkt. No. 34-36]. Specifically,

the MSPB amended the calculation of the total number of hours Williams had been absent from work, concluding that, for reasons discussed below, the excessive absences charge was supported by 1,109.25 hours of absence, rather than 2,741.25 hours. Id. at 9. After making those corrections and affirming the AJ's finding that the February 10, 2016 letter provided Williams with sufficient notice of potential discipline, id. at 5, the Board concluded that the AJ appropriately sustained the penalty of removal "given the proven specifications of the excessive absences charge and the relevant penalty factors," id. at 9.

C. Procedural History

On May 13, 2024, Williams filed a six-count Complaint in the United States District Court for the District of Columbia, which transferred the Complaint to this Court on May 5, 2025. [Dkt. Nos. 1 & 24]. Count I seeks review of the MSPB's decision and a finding that defendant has not proven its charge of excessive absences. [Dkt. No. 1] at ¶¶ 57–66. Count II alleges that defendant violated Williams's due process rights by failing to notify him that he could be disciplined for excessive absences. Id. ¶¶ 67–70. Counts III and IV raise claims that defendant engaged in race- and color-based discrimination in violation of Title VII by failing to terminate similarly situated patent examiners. Id. ¶¶ 71–78. Count V claims that defendant retaliated against Williams in violation of Title VII after he filed discrimination complaints against his supervisors. Finally, Count VI alleges that defendant retaliated against Williams in violation of the FMLA. Id. ¶¶ 87–92. The Complaint seeks "compensatory damages in the form of back pay, interest on back pay, promotion, overtime, front pay, retirement benefits, emotional distress," as well as attorney's fees and costs. Id. ¶¶ 93–94.

On July 1, 2025, defendant filed the pending Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Judgment on the Pleadings, and for Summary Judgment. [Dkt. Nos. 31–33]. This Court issued a standard Roseboro notice the next day, [Dkt. No. 37], and plaintiff

sought an extension of time to file a response, which was granted, [Dkt. No. 39]. On August 5, 2025, plaintiff filed a "Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion to Dismiss and Motion for Judgment on the Pleadings," [Dkt. No. 40], to which defendant has replied, [Dkt. No. 48].[3]

## II. DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss an action if it finds subject matter jurisdiction lacking. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). Under Federal Rule of Civil Procedure 12(c), a party is entitled to judgment on the pleadings only when the pleadings, construing the facts in the light most favorable to the non-moving party, (1) fail to state any cognizable claim for relief; and (2) the matter can be decided as a matter of law. See Zeran v. Am. Online, Inc., 129 F.3d 327, 329 (4th Cir. 1997). In other words, "[t]he standard for a motion for judgment on the pleadings is equivalent to the familiar Iqbal/Twombly plausibility standard governing motions to dismiss under Rule 12(b)(6)." United States v. Academi Training Ctr., Inc., 220 F. Supp. 3d 676, 679 (E.D. Va. 2016). Finally, when considering cross-motions for summary judgment, a district court should consider "each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." Adamson v. Columbia Gas Transmission, LLC, 987 F. Supp. 2d 700, 703 (E.D. Va. 2013). Under that standard, summary judgment should be granted only if, after viewing the entire record in the light most favorable to the non-moving party, the Court finds that "there is no genuine

---

[3] The Clerk's Office issued a notice of correction instructing plaintiff to file a motion if he intended his August 4, 2025 filing to be considered as a motion for summary judgment. Accordingly, plaintiff filed his Motion for Summary Judgment on August 28, 2025. [Dkt. No. 51].

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). There is no genuine issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A. Count I

In Count I, Williams seeks reversal of the MSPB's decision sustaining the USPTO's termination of plaintiff's employment for excessive absences, arguing that the USPTO failed to prove that it adequately notified Williams of potential discipline for excessive absences and failed to prove that it had not approved Williams's requests for LWOP. [Dkt. No. 1] at ¶¶ 67–65. The USPTO argues that it is entitled to summary judgment as to Count I because "[t]he record contains substantial evidence supporting the MSPB's affirmance of the USPTO's removal decision." [Dkt. No. 34] at 18.

This Court's review of the MSPB's decision with respect to this claim is narrow and limited to a review of the administrative record. Luther v. Gutierrez, 618 F. Supp. 2d 483, 494–95 (E.D. Va. 2009). The MSPB's decision must be affirmed unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulating having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency," and courts "will not disturb a penalty unless it exceeds the range of permissible punishment or is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." Luther, 618 F. Supp. 2d at 495.

In analyzing the lawfulness of an employee's removal based on a charge of excessive

7

absences, the MSPB first must consider whether the agency was permitted to take adverse employment action based on the employee's use of approved leave. In its decision, the MSPB explained:

> As a general rule, an agency may not take an adverse action based on an employee's use of approved leave. <u>Coombs v. Social Security Administration</u>, 91 M.S.P.R. 148, ¶ 12 (2002). However, an exception exists when the following criteria are met: (1) the employee was absent for compelling reasons beyond his control so that agency approval or disapproval of leave was immaterial because he could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless he became available for duty on a regular, full-time or part-time basis; and (3) the agency showed that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. <u>Cook v. Department of the Army</u>, 18 M.S.P.R. 610, 611–12 (1984). This exception is applicable only under unusual circumstances, such as when the employee is unable to return to duty because of the continuing effects of illness or injury. <u>Id.</u>

[Dkt. No. 34-26] at 3. If the MSPB sustains a charge of excessive absences, it then considers whether the agency "exercised management discretion within tolerable limits of reasonableness" in selecting a penalty. [Dkt. No. 34-23] at 36 (citing <u>Douglas v. Veterans Admin.</u>, 5 M.S.P.R. 280, 306 (1981)).

As to the MSPB's initial decision, defendant correctly argues that the AJ meticulously evaluated each <u>Cook</u> factor and properly sustained the USPTO's charge of excessive absences. [Dkt. No. 34-23] at 25. After examining each time period in which Williams was absent from work, the AJ found that Williams was absent for over 2,300 hours "while on leave for compensable injury or on LWOP," which was "clearly sufficient to sustain a charge of excessive absence." <u>Id.</u> at 19 (collecting cases). Moreover, the AJ found that Williams received adequate notice of potential discipline via the agency's February 10, 2016 letter, which was mailed to Williams's home address. <u>Id.</u> at 22. As to the third <u>Cook</u> factor, Williams argued that the USPTO failed to show that his position needed to be filled by an available employee because

8

there were several vacant Patent Examiner positions. Id. at 24. The AJ rejected that argument, explaining that the USPTO was "in the process of hiring numerous new examiners" to address the "significant backlog of patent applications." Id. The AJ also considered that President Trump's January 2017 hiring freeze halted the USPTO's hiring efforts for several months, which partially explained why the agency had not filled several vacancies. Id.

Having sustained the charge of excessive absences, and after rejecting Williams's various affirmative defenses, the AJ found that the penalty of removal was reasonable. Id. at 37. The AJ explained that the USPTO officer who made the decision to terminate Williams's employment considered a variety of aggravating factors—including the adverse impact of Williams's absence on the agency and the agency's lack of confidence that Williams would return to work on a regular basis—and mitigating factors—such as Williams's three years of service, his outstanding performance rating in 2014, his medical evidence, and his lack of a disciplinary record. Id. The AJ also emphasized that "[t]o allow an employee to remain away from work seriously impedes the function of an agency, imposes additional burdens on other employees, and if tolerated, destroys the morale of those who meet their obligation." Id. at 38. Accordingly, the AJ declined to disturb the penalty imposed. Id.

Before the MSPB, Williams raised three objections to the AJ's initial decision. [Dkt. No. 34-26]. First, Williams argued that the Board should reconsider his claim that he never received the February 10, 2016 letter providing notice of potential discipline related to his excessive absences. The Board evaluated Williams's "sworn statement that he did not receive the . . . letter" but found that his statement was "still insufficient in light of the other considerations identified by the administrative judge." Id. at 5. For example, the Board found it relevant that "the letter was delivered to the appellant's street address on February 12, 2016, and left at the front door" and that, during a hearing before the AJ, Williams's "representative

affirmatively stated that [Williams] had received the letter, and [Williams] said nothing to correct or contradict his representative's statement." Id. Williams argues that his representative's statement does not support the MSPB's conclusion that he received the February 10, 2016, letter because it was "merely an unsworn statement from Defendant's Human Resources (HR) employee, Jennifer Ware," [Dkt. No. 40] at 20]; however, even without the representative's statement, there is substantial evidence in the record to support the Board's conclusion that it is "more likely than not that [Williams] received the agency's letter on February 12, 2016."[4] Id.

Second, the Board corrected some of the USPTO's calculation that Williams had been "absent from work in a leave status for a total of 2,741.25 hours during various specified periods from July 7, 2015, through February 3, 2017," by discounting several hours of leave from the overall calculation. Id. at 5. In other words, as defendant explains, "the MSPB . . . comb[ed] through each hour of leave Plaintiff challenged and gave him every benefit of the doubt," which "significantly reduced the total absences deemed unreasonable." [Dkt. No. 34] at 19. The Board first discounted 1,192 hours for leave taken before February 12, 2016, holding that "an agency cannot rely on absences that predate the warning" of potential discipline for excessive absences. Id. at 3. Next, because FMLA-covered leave cannot support an excessive absences charge, the Board subtracted an additional 416 hours, which accounted for a supervisor's email that implied that Williams's leave from November 4, 2016 to January 24, 2017 would be covered by the

---

[4] Plaintiff argues that "the purported delivery to [his] front door is legally insufficient" because "Federal Rule of Civil Procedure . . . 5(a)(1)(E) mandates written notice be served on a party" and "New Jersey Administrative Code § 5:70-2.11 outlines comprehensive service methods, including certified mail." [Dkt. No. 40] at 18–19. These arguments are unavailing because Federal Rule of Civil Procedure 5 outlines service requirements for pleadings in federal court, and New Jersey Administrative Code § 5:70-2.11, which is part of New Jersey's Uniform Fire Safety Act, see § 5:70-1.5, outlines how to effectuate service of orders entered pursuant to the Uniform Fire Safety Act. Neither service rule is applicable where a federal agency mails an internal document to its employee.

FMLA. Id. at 6–7. Finally, "although [Williams] was carried in an LWOP status on three Federal holidays . . . during the remaining period of fairly charged excessive absences," the Board "excluded those 24 LWOP hours from [its] consideration." Id. at 8. All told, the Board afforded Williams every benefit of the doubt regarding the number of hours properly included in his excessive absences charge and found that the charge was supported by "1,109.25 hours, or 138 days, in a 1-year period." Id. at 9. Although those absences were less extensive than the number of absences with which Williams was originally charged, the Board concluded that Williams's absence still "continued beyond a reasonable time" and that the penalty of removal was reasonable. Id. at 8–9.

Third, the Board reconsidered Williams's argument that the USPTO did not need to fill his position because the agency "had 51 other Patent Examiner vacancies that it was unable to fill." Id. at 8. The Board rejected this argument, finding that the existence of those vacancies "did not mean that the agency did not need to fill [Williams's] position," particularly given that "the agency had a backlog of cases and was attempting to hire hundreds of new Patent Examiners to handle them." Id. Plaintiff argues that "the MSPB erred by not considering that Williams had returned to duty over a month prior and was actively writing office actions to help reduce the backlog," [Dkt. No. 40] at 22; however, as the agency explained in its Decision on Notice of Proposed Removal, Williams's "absences . . . continued well beyond a reasonable time" and the agency "lack[ed] the confidence that [he would] come to work on a regular basis and complete [his] assigned duties," [Dkt. No. 34-16] at 3. In other words, although plaintiff returned to work for approximately one month before being removed, his lengthy history of absenteeism justified the agency's concern that it would continue into the future.

In sum, the extensive evidence in the record of plaintiff's absences and the MSPB's careful consideration of all of Williams's arguments clearly support the conclusion that there are

11

no material facts in dispute and that the MSPB's decision is fully supported by substantial evidence and is neither arbitrary nor capricious. See 5 U.S.C. § 7703(c). For these reasons, defendant's Motion will be granted as to Count I.

B. Count II

Count II alleges that defendant violated Williams's constitutional right to due process by failing to provide adequate notice that he could be disciplined for excessive absences and by suspending him from July 17, 2016 through September 14, 2016 without fair notice, a hearing, or an opportunity to be heard. [Dkt. No. 1] at ¶¶ 67–70. Williams expands on that claim in his opposition to defendant's Motion by alleging that defendant failed to meet the statutory due process requirements outlined in 5 U.S.C. § 7513(b) before suspending him.[5] [Dkt. No. 40] at 10–12. In response, the USPTO argues that it is entitled to judgment on the pleadings because the Complaint fails to allege sufficient facts to support Williams's due process claim.[6] Specifically, defendant argues that Williams's claim that the agency failed to warn him of potential disciplinary measures is undercut by the February 10, 2016 letter informing Williams that if he was "not available to report to duty on a regular basis, the Agency [would] have no recourse but to initiate an adverse action, up to and including . . . removal." [Dkt. No. 34-9] at 2. Although Williams argues that he never received this letter, [Dkt. No. 1] at ¶ 68, the MSPB

---

[5] Defendant contends that "any claim based on [§ 7513] is found nowhere in Plaintiff's Compliant" and is therefore "not properly before the Court." [Dkt. No. 48] at 6. This position ignores William's pro se status, which requires this Court to "look beyond a failure to cite proper legal authority [or] confusion of legal theories." Gill v. U.S. Parole Comm'n, 2018 WL 11696402, at *1 (N.D.W. Va. July 23, 2018).

[6] Defendant's additional argument that Williams's "constitutional claim . . . can only be brought under Title VII," [Dkt. No. 34] at 13, is misguided because Count II contains allegations of procedural due process violations, not employment discrimination. See Middlebrooks v. Leavitt, 525 F.3d 341, 349 (4th Cir. 2008) ("Title VII represents [plaintiff's] exclusive remedy for any claim against the United States for intentional discrimination in employment.").

properly found that Williams's claim of non-receipt was "insufficient in light of . . . other considerations." [Dkt. No. 34-26] at 5. Most importantly, the agency produced a UPS receipt indicating that the letter was delivered to Williams's address in South River, New Jersey, on February 12, 2016 at 3:10 PM and left at the front door.[7] [Dkt. No. 34-9] at 5–6. And it is well settled that "where a letter is sent by regular mail and there is evidence . . . that the letter was mailed, there is a presumption in federal court that the addressee received it." United States v. Diaz-Martinez, 380 F. Supp. 3d 486, 499 (4th Cir. 2019). Accordingly, the Complaint fails to state a plausible claim for relief based on defendant's alleged failure to notify Williams of potential discipline regarding his absences.

Second, defendant persuasively argues that Williams's due process claim arising out of his alleged suspension from July 17, 2016 through September 14, 2016 fails because there is ample evidence in the record demonstrating that Williams was not actually suspended during that time period. Most importantly, although Williams received an email on July 11, 2016 stating that his "suspension will run Sunday, July 17, 2016 through Wednesday, September 14, 2016," the sender responded to that email 11 minutes later stating: "Please disregard this e-mail. It was sent to the wrong party." [Dkt. No. 48-1] at 2. Additionally, Williams's timesheets from that period do not reflect a suspended status. Rather, the timesheets from July 10, 2016 to September 3, 2016 reflect that Williams took LWOP during that time, and the timesheet from September 4, 2016 to September 17, 2016 reflects that Williams worked for approximately 42 hours and

---

[7] Before the MSPB, Williams argued that "he resided in a multi-unit dwelling and that the UPS receipt confirmation did not confirm that it was delivered to a specific unit." [Dkt. No. 34-23] at 22. Because Williams conceded that he "did not provide a specific unit number to the agency," the MSPB concluded—and this Court agrees—that "[a]n employee is responsible for any documentation not received due to the employee's failure to provide the agency with a specific and complete address." Id.

accumulated approximately 37 hours of leave and absences. [Dkt. No. 34-4] at 40–44. Finally, Williams's submission to the USPTO requesting leave from June 15, 2016 through September 15, 2016 for mental health treatment further demonstrates that Williams was not suspended during that time. [Dkt. No. 34-10] at 3. Accordingly, because the suspension Williams complains about did not occur, defendant's Motion will be granted as to Count II.

C. Counts III, IV, and V

Counts III and IV allege that defendant discriminated against Williams by terminating him because of his race and color, which he describes as African American and Black. [Dkt. No. 1] at ¶¶ 6, 71–78. Count V alleges that defendant retaliated against Williams by terminating him in response to his filing discrimination complaints against his supervisors in September 2015 and December 2015.[8] Id. ¶¶ 79–86. In response, the USPTO argues that it is entitled to summary judgment as to Counts III, IV, and V because Williams was not performing his job in a satisfactory manner and because the agency has offered a legitimate, non-discriminatory and non-retaliatory reason for terminating plaintiff's employment. [Dkt. No. 34] at 21–25.

Title VII prohibits an employer from discriminating against an employee based upon the individual's race, color, religion, sex, or national origin, and from retaliating against an employee for engaging in activity protected by Title VII. 42 U.S.C. §§ 2000e-16(a); 2000e-3(a). Because Williams does not have direct evidence of discriminatory or retaliatory animus, he must follow the burden-shifting framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973). Under McDonnell Douglas, a prima facie case for discrimination requires a plaintiff to assert facts that establish "(1) membership in a protected

---

[8] Although plaintiff raised these claims before the MSPB, the Court must review discrimination and retaliation claims de novo. Luther, 618 F. Supp. 2d at 490.

class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). A prima facie case for retaliation requires a plaintiff to assert facts that establish that "(1) the plaintiff engaged in protected activity, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action." Ray v. Int'l Paper Co., 909 F.3d 661, 669 (4th Cir. 2018). If a plaintiff establishes a prima facie case, a presumption of illegal discrimination or retaliation arises, and the burden shifts to the employer to state a legitimate, non-discriminatory or non-retaliatory reason for its adverse action. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). If the employer satisfies this burden, the plaintiff must demonstrate that the employer's purported non-discriminatory or non-retaliatory reasons are pretextual. Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 256 (1981).

First, Williams cannot make out a prima facie case for discrimination or retaliation. Starting with the prima facie case for discrimination, defendant correctly argues that Williams cannot show satisfactory job performance. Even excluding the hundreds of hours Williams was absent from work before he received a warning of potential discipline in February 2016, he missed 1,109.25 hours of work in a one-year period, which totals 138 days. [Dkt. No. 34-26] at 9. During that time, Williams produced no work and therefore could not possibly have satisfied the core requirements of his position as a Patent Examiner. See Watson v. Fairfax County, 297 F. Supp. 3d 591, 602 (E.D. Va. 2018) (finding that a plaintiff failed to establish a prima facie case of discrimination because she took 132 hours of leave in her first 6 months of work, causing her to miss deadlines and "fail[] to satisfy the core requirements of her position"). Williams argues that he returned to work in May 2017 and performed adequately before being terminated in June 2017, [Dkt. No. 40] at 25; however, as defendant persuasively responds, Williams's one

15

month of work in 2017 cannot make up for the months of work missed, and "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Techs. Apps. & Servs. Co., 80 F.3d 954, 960–61 (4th Cir. 1996) (cleaned up).

Williams also cannot establish a prima facie case of retaliation because of the extensive time between his alleged protected activity and the adverse employment action. Williams alleges that he was terminated in response to his filing discrimination complaints against his supervisors in September 2015 and December 2015, [Dkt. No. 1] at ¶ 79; however, Williams's employment was not terminated until June 7, 2017, [Dkt. No. 34-16] at 3. This year-and-a-half long gap between the protected activity and the adverse action "is sufficient to negate any inference of causation." Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2006) (six months); see Atkins v. Holder, 529 Fed. Appx. 318, 321 (4th Cir. 2013) (four months); Perry v. Kappos, 489 Fed. Appx. 637, 643 (4th Cir. 2006) (ten weeks); Pascual v. Lowe's Home Ctrs., Inc., 193 Fed. Appx. 229, 233 (4th Cir. 2006) (four months).

Second, even assuming Williams had established a prima facie case of discrimination and retaliation, defendant correctly contends that the USPTO has stated a legitimate, non-discriminatory and non-retaliatory reason for removing Williams as a Patent Examiner—namely, excessive absenteeism. The USPTO consistently maintained that its issue with Williams's employment was his excessive absences. First, in the agency's February 10, 2016 letter that was mailed to Williams, it explained that his "extended absence has had an adverse impact on the efficiency of the service and cannot continue indefinitely" and warned that if Williams is "not available to report to duty on a regular basis, the Agency will have no recourse but to initiate an adverse action." [Dkt. No. 34-9] at 2. Second, the agency's March 1, 2017 Notice of Proposed Removal explained to Williams that "[t]he fact that you have not come to work and performed your duties in over a year is serious and affects the agency's ability to carry out its mission" and

16

that "[r]eporting to work is an essential element of any federal position." [Dkt. No. 34-1] at 6. Finally, in the USPTO's June 7, 2017 Decision on Notice of Proposed Removal, the agency explained that Williams was being removed for "excessive absences," which is "based on extended periods of <u>approved</u> leave." [Dkt. No. 34-16] at 3 (emphasis in original). As courts in this Circuit have held, "discharging an employee for well-documented poor attendance is sufficient to rebut an inference of discrimination." <u>Pinkett v. Apex Comms. Corp.</u>, 2009 WL 1097531, at *7 (E.D. Va. Apr. 21, 2009); <u>Watson</u>, 297 F. Supp. 3d at 603–04 (holding an employee's excessive absences were a legitimate, non-discriminatory reason for her termination); <u>Nelson v. Three Points Ctr., LLC</u>, 2025 WL 1027846, at *20 (M.D.N.C. Apr. 7, 2025) (finding that a plaintiff's "documented attendance violations" constituted a legitimate, non-discriminatory reason for her termination).

Williams attempts to demonstrate that defendant's reasoning is pretextual by focusing on how the USPTO treated an Asian Patent Examiner named Hexing Liu ("Liu"), who had excessive absences, differently from how the agency treated plaintiff. [Dkt. No. 40] at 26. But Williams and Liu were not "similarly-situated in all respects." <u>Spencer v. Va. State Univ.</u>, 919 F.3d 199, 207 (4th Cir. 2019). Although Liu had also accumulated a significant amount of LWOP, he was not terminated for excessive absences because his application for disability retirement—an application which Williams has not made—was pending before the Office of Personnel Management. [Dkt. No. 34-29] at ¶ 16. Accordingly, because defendant has established a legitimate, non-discriminatory and non-retaliatory reason for Williams's removal, and because Williams has failed to show that defendant's reason was pretextual, defendant's Motion will be granted as to Counts III, IV, and V.

D. <u>Count VI</u>

Count VI alleges that the Director of the USPTO's Technology Center "issued the March

17

1, 2017 proposed removal to retaliate against Plaintiff for taking FMLA leave" and that "Defendant included Plaintiff's November 3, 2016 to February 3, 2017 FMLA leave in its excessive approved leave charge to retaliate against Plaintiff for taking and using the benefits and privileges of FMLA leave." [Dkt. No. 1] at ¶¶ 91–92. As an initial matter, although Williams complains that the agency unlawfully included FMLA-covered leave in its charge of excessive absences, the MSPB subtracted those hours from the charge, finding that Williams's supervisor had implied that the leave from November 4, 2016 to January 24, 2017 was covered by the FMLA. [Dkt. No. 34-26] at 6–7.

But more fundamentally, Williams's FMLA claim is barred by the doctrine of sovereign immunity. The FMLA grants private and federal employees the right to family and temporary medical leave under certain circumstances. 29 U.S.C. § 2612(a)(1); 5 U.S.C. § 6382(a)(1). Title 1 of the FMLA, 29 U.S.C. § 2601 et seq., governs private employees and federal employees not covered by Title II. Title II, 29 U.S.C. § 6281 et seq., "governs leave for federal civil service employees who have worked more than twelve months in civil service, are not postal employees, and do not meet the narrow exceptions identified in 5 U.S.C. § 2105(a)."[9] Cruthirds v. Lacey, 2017 WL 2242868, at *3 (E.D.N.C. May 22, 2017). Although employees covered by Title I and Title II are "afforded equivalent rights to leave time," Title I contains a private right of action and Title II does not. Id. The Fourth Circuit has interpreted that distinction to indicate that Congress has not waived the federal government's sovereign immunity with respect to Title II FMLA claims. Mann v. Haigh, 120 F.3d 34, 37 (4th Cir. 1997) ("[T]he omission of a provision in Title II similar to that in Title I creating a private right of action is treated as an affirmative

---

[9] 5 U.S.C. § 2105(a)'s exceptions include individuals specially appointed in the civil service and certain employees in the United States Naval Academy.

congressional decision that the employees covered by Title II of the FMLA should not have a right to judicial review of their FMLA claims through the FMLA.").

Williams worked at the USPTO for approximately three years, [Dkt. No. 34] at 1, he is not a postal employee, and none of 5 U.S.C. § 2105(a)'s exceptions apply. Accordingly, as a Patent Examiner, Williams's leave was governed by Title II of the FMLA, which does not contain a private right of action. Therefore, this Court lacks subject matter jurisdiction over Count IV.

### III. CONCLUSION

For the reasons stated above, defendant's Motion [Dkt. Nos. 31–33] will be granted and plaintiff's Motion [Dkt. No. 51] will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 22 day of December, 2025.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge